**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MATTHEW WHITFIELD, ) <br> ) <br> Plaintiff, ) <br> ) <br> ) Case No. _____ <br> v. ) <br> ) JURY TRIAL DEMANDED <br> ) <br> CEDAR REALTY TRUST, INC., BRUCE J. ) <br> SCHANZER, GREGG A. GONSALVES, ) <br> ABE EISENSTAT, STEVEN G. ROGERS, ) <br> SABRINA KANNER, DARCY D. MORRIS, ) <br> RICHARD H. ROSS, and SHARON STERN, ) <br> ) <br> Defendants. ) | |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This action stems from a proposed transaction announced on March 2, 2022 (the "Proposed Transaction"), pursuant to which Cedar Realty Trust, Inc. ("Cedar" or the "Company") will be acquired by DRA Fund X-B LLC ("DRA"), KPR Centers LLC ("KPR," and together with DRA, "Purchaser"), and DRA Growth and Income Master Fund X-B, LLC ("DRA Purchaser Parent").

2. On March 2, 2022, Cedar's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an Asset Purchase and Sale Agreement (the "Merger Agreement") with Purchaser and DRA Purchaser Parent. Pursuant to the terms of the Merger Agreement, Cedar's stockholders will receive approximately $29.00 in cash for each share of Cedar common stock they own.

3.      On April 5, 2022, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction.

4.      The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.      This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391(b) because a portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Cedar common stock.

9.      Defendant Cedar is a Maryland corporation and a party to the Merger Agreement. Cedar's common stock is traded on the New York Stock Exchange under the ticker symbol "CDR."

10.     Defendant Gregg A. Gonsalves is Chairman of the Board of the Company.

11. Defendant Bruce J. Schanzer is President, Chief Executive Officer, and a director of the Company.

12. Defendant Abe Eisenstat is a director of the Company.

13. Defendant Steven G. Rogers is a director of the Company.

14. Defendant Sabrina Kanner is a director of the Company.

15. Defendant Darcy D. Morris is a director of the Company.

16. Defendant Richard H. Ross is a director of the Company.

17. Defendant Sharon Stern is a director of the Company.

18. The defendants identified in paragraphs 10 through 17 are collectively referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

19. Cedar is a fully integrated real estate investment trust which focuses on the ownership, operation, and redevelopment of grocery-anchored shopping centers in high-density urban markets from Washington, D.C. to Boston.

20. On March 2, 2022, Cedar's Board caused the Company to enter into the Merger Agreement.

21. Pursuant to the terms of the Merger Agreement, Cedar's stockholders will receive approximately $29.00 in cash per share.

22. According to the press release announcing the Proposed Transaction:

> Cedar Realty Trust (NYSE: CDR) (the "Company") today announced that following its previously announced dual-track review of strategic alternatives, it has entered into definitive agreements for the sale of the Company and its assets in a series of related all-cash transactions. . . .
>
> The transactions, which were unanimously approved by the Company's Board of Directors, are estimated to generate total net proceeds, after all transaction

3

expenses, of more than $29.00 per share in cash, which will be distributed to shareholders upon completion. The $29.00 per share of estimated net proceeds represent a 16.6% premium to Cedar's closing share price on March 2, 2022, and a 70.6% premium to the Company's closing share price on September 9, 2021, the last day of trading prior to the announcement of the dual-track review of strategic alternatives. . . .

Upon completion of the transactions, Cedar will be wholly owned by Wheeler Real Estate Investment Trust, and Cedar's common stock will no longer be publicly traded. Pursuant to the terms of the merger agreement with Wheeler, all shares of Cedar's currently outstanding 7.25% Series B Preferred Stock and 6.50% Series C Preferred Stock, will remain outstanding shares of Cedar preferred stock following the merger and will remain listed on the New York Stock Exchange under their current ticker symbols.

The transactions are not subject to financing conditions and are expected to close by the end of the second quarter of 2022, subject to satisfaction of customary closing conditions, including approval by Cedar's common shareholders.

BofA Securities and JLL Securities are acting as financial advisors to Cedar, and Goodwin Procter LLP is acting as legal counsel to Cedar. JLL is acting as the Company's real estate advisor with respect to the sale of the grocery-anchored shopping center portfolio and CBRE is acting as real estate advisor to Cedar with respect to the sale of the redevelopment projects.

***The Proxy Statement Omits Material Information, Rendering It False and Misleading***

23. Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

24. As set forth below, the Proxy Statement omits material information.

25. First, the Proxy Statement omits material information regarding the Company's financial projections.

26. The Proxy Statement fails to disclose: (i) all line items used to calculate the projections; (ii) a reconciliation of all non-GAAP to GAAP metrics; and (iii) projected unlevered free cash flows and all underlying line items.

27. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows

stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

28. Second, the Proxy Statement omits material information regarding the analyses performed by the Company's financial advisor, Jones Lang LaSalle Securities, LLC ("JLL").

29. With respect to JLL's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the unlevered free cash flows used in the analysis and all underlying line items; (ii) the terminal values used in the analysis; and (iii) the individual inputs and assumptions underlying the discount rates and perpetuity growth rates used in the analysis.

30. With respect to JLL's Comparable Public Companies Analysis, the Proxy Statement fails to disclose the individual multiples and metrics for the companies observed in the analysis.

31. With respect to JLL's Selected Precedent Public REIT Mergers and Acquisitions Transaction Analysis, the Proxy Statement fails to disclose the individual multiples and metrics for the transactions observed in the analysis.

32. With respect to JLL's Selected Portfolio-Level Transaction Analysis, the Proxy Statement fails to disclose: (i) the transactions observed in the analysis; and (ii) the individual multiples and metrics for the transactions observed in the analysis.

33. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

34. Third, the Proxy Statement omits material information regarding the Company's financial advisors' engagements.

35. The Proxy Statement fails to disclose the amount of compensation JLL has received or will receive for the prior services it provided to the parties to the Merger Agreement and their affiliates.

36. The Proxy Statement also fails to disclose the terms of BofA Securities' ("BofA") engagement, including: (i) the amount of compensation BofA has received or will receive in connection with its engagement; (ii) the amount of BofA's compensation that is contingent upon the consummation of the Proposed Transaction; (iii) whether BofA has performed past services for any parties to the Merger Agreement or their affiliates; (iv) the timing and nature of such services; and (v) the amount of compensation received by BofA for providing such services.

37. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

38. The omission of the above-referenced material information renders the Proxy Statement false and misleading.

39. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Cedar**

40. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

41. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary

to make the statements therein not materially false or misleading. Cedar is liable as the issuer of these statements.

42. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

43. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

44. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

45. The Proxy Statement is an essential link in causing plaintiff to approve the Proposed Transaction.

46. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

47. Because of the false and misleading statements in the Proxy Statement, plaintiff is threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

48. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

49. The Individual Defendants acted as controlling persons of Cedar within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers

and/or directors of Cedar and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

50. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

51. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

52. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

53. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff is threatened with irreparable harm.

**PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: April 18, 2022                    **RIGRODSKY LAW, P.A.**

                                                     By: */s/ Gina M. Serra*
                                                           Gina M. Serra
                                                           825 East Gate Boulevard, Suite 300
                                                           Garden City, NY 11530
                                                           Telephone: (516) 683-3516
                                                           Email: gms@rl-legal.com

                                                           *Attorneys for Plaintiff*